SHARON AMOS, KATHY HALL AND EARLINE MARSHALL v. OAKDALE KNITTING COMPANY AND WALTER MOONEY, III

No. 278A91

(Filed 8 May 1992)

1. **Master and Servant § 8.1 (NCI3d)— minimum wage—employees required to work for less—violation of public policy**

    Defendants violated the public policy of North Carolina by firing plaintiffs for refusing to work for less than the statutory minimum wage. Although the definition of "public policy" approved by the Supreme Court does not include a laundry list of what is or is not "injurious to the public or against the public good," at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.

    **Am Jur 2d, Labor and Labor Relations §§ 2559, 2567, 2571.**

2. **Master and Servant § 10.2 (NCI3d)— wrongful discharge— refusal to accept less than minimum wage—alternative remedies**

    The availability of alternative remedies does not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception to the employment at will doctrine, absent federal preemption or the intent of our state legislature to supplant the common law with exclusive statutory remedies. The availability of alternative common law and statutory remedies supplements rather than hinders the ultimate goal of protecting employees who have been fired in violation of public policy.

    **Am Jur 2d, Master and Servant §§ 48.7, 60.**

3. **Master and Servant § 10.2 (NCI3d)— wrongful discharge— public policy exception—federal preemption—state statutory preclusion**

    The issue of whether the federal Fair Labor Standards Act preempted a state action for wrongful discharge for refusal to work for less than minimum wage was a constitutional question which was not passed upon by the trial court or the Court of Appeals and was not properly before the Supreme Court. Moreover, the North Carolina legislature, by enacting

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

the Wage and Hour Act, did not intend to preclude wrongful discharge actions based on violation of the state's public policy requiring employers to pay their employees at least the statutory minimum wage.

**Am Jur 2d, Labor and Labor Relations §§ 2545, 2546, 2559; Master and Servant §§ 48.7, 66.**

4. **Master and Servant § 10.2 (NCI3d) — wrongful discharge — separate claim for bad faith discharge — not recognized**

The discussion of bad faith discharge by the North Carolina Supreme Court in *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, was dicta. The issue in *Coman* was whether to adopt a public policy exception to the employment at will doctrine and the Court did not recognize a separate claim for wrongful discharge in bad faith.

**Am Jur 2d, Master and Servant § 48.7.**

ON appeal by plaintiffs pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, 102 N.C. App. 782, 403 S.E.2d 565 (1991), affirming an order of *Morgan, J.*, at the 3 April 1989 Session of Superior Court, SURRY County, dismissing plaintiffs' complaint pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). Plaintiffs' petition for discretionary review as to additional issues was allowed by the Supreme Court on 14 August 1991. Heard in the Supreme Court 13 February 1992.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellants.*

*Allman Spry Humphreys Leggett & Howington, P.A., by W. Thomas White, David C. Smith and W. Rickert Hinnant, for defendant-appellees.*

*J. Wilson Parker, Deborah Leonard Parker, J. Michael McGuinness, Lisa A. Parlagreco, Gayle C. Wintjen and McGuiness S. Parlagreco for North Carolina Academy of Trial Lawyers; and Elliot, Pishko, Gelbin & Morgan, by Robert M. Elliot, for North Carolina Civil Liberties Union Legal Foundation, amici curiae.*

*Pamela R. DiStefano and Maureen A. Sweeney for Farmworkers Legal Services of North Carolina, amicus curiae.*

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

FRYE, Justice.

For the first time since our decision in *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989), we examine the contours of the public policy exception to the employment-at-will doctrine. Three issues are presented: (1) does firing an employee for refusing to work for less than the statutory minimum wage violate the public policy of North Carolina? (2) does the availability of alternative remedies prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception to the employment-at-will doctrine? and (3) did *Coman* recognize a separate and distinct exception to the employment-at-will doctrine based on "bad faith" termination?

For the reasons outlined below, we hold that firing an employee for refusing to work for less than the statutory minimum wage violates the public policy of North Carolina. Furthermore, we hold that absent (a) federal preemption or (b) the intent of our state legislature to supplant the common law with exclusive statutory remedies, the availability of alternative federal or state remedies does not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception. Based on these two holdings, we conclude that plaintiffs in this case have stated a valid claim for wrongful discharge in violation of public policy. Finally, we hold that *Coman* did not recognize a separate and distinct "bad faith" exception to the employment-at-will doctrine.

On 27 January 1989, plaintiffs Amos, Hall, and Marshall filed a complaint in Surry County Superior Court alleging the following facts. In February 1988, plaintiffs, employees at defendant Oakdale Knitting Company, learned that their pay had been reduced to $2.18 per hour, below the statutory minimum wage. When they inquired of their supervisor, Herbert Bowman, as to why their pay had been reduced below the minimum wage, they were instructed to talk with defendant Walter Mooney, III, one of the owners of Oakdale Knitting. When Mooney arrived at the plant, he told the plaintiffs that they either had to work for the reduced pay or they were fired. Plaintiffs refused to work for $2.18 per hour and were terminated.

Plaintiffs' complaint alleges that their firing violates the public policy of North Carolina as set forth in N.C.G.S. § 95-25.3—the minimum wage section of the state's Wage and Hour Act. Plaintiffs sought actual damages, including lost wages, and special damages

for "great worry, embarrassment, humiliation, anxiety and mental and emotional distress." Plaintiffs also sought punitive damages.

Defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to N.C. R. Civ. P. 12(b)(6). On 6 April 1989, Judge Morgan granted defendants' motion and dismissed the action. Plaintiffs appealed to the Court of Appeals, which affirmed the trial court, holding that plaintiffs had not stated a valid claim for wrongful discharge. *Amos v. Oakdale Knitting Co.*, 102 N.C. App. 782, 403 S.E.2d 565 (1991). Judge Johnson dissented on the narrow ground that plaintiffs' complaint had stated a claim pursuant to N.C.G.S. § 95-25.22 (recovery of unpaid wages under the Wage and Hour Act). Plaintiffs appealed to this Court based on the dissenting opinion; on 14 August 1991 we allowed plaintiffs' petition for discretionary review as to additional issues. We now reverse the Court of Appeals.

I.

This case comes to us, via the Court of Appeals, on a motion to dismiss for failure to state a claim upon which relief can be granted. For purposes of this appeal, therefore, all allegations of fact are taken as true. *Jackson v. Bumgardner*, 318 N.C. 172, 174-75, 347 S.E.2d 743, 745 (1986).

In *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445, plaintiff Coman alleged that he was discharged from his job as a long-distance truck·driver after refusing to violate federal transportation regulations. Coman brought suit for wrongful discharge. This Court reversed the Court of Appeals, which had agreed with the trial court's dismissal of the action, and allowed Coman's suit to proceed. In so doing, we explicitly recognized a public policy exception to the well-entrenched employment-at-will doctrine, quoting with approval the following language from the Court of Appeals' opinion in *Sides v. Duke Hospital*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985):

> "[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent."

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

*Coman*, 325 N.C. at 175, 381 S.E.2d at 447 (quoting *Sides*, 74 N.C. App. at 342, 328 S.E.2d at 826). We then said that public policy "has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* at 175 n.2, 381 S.E.2d at 447 n.2 (citing *Petermann v. International Brotherhood of Teamsters*, 174 Cal. App. 2d 184, 344 P.2d 25 (1959)).

[1] The first issue in this case, then, is whether defendants' alleged decision to fire plaintiffs for refusing to work for less than the statutory minimum wage is injurious to the public or against the public good. Stated differently, has defendants' conduct as alleged by plaintiffs violated the public policy of North Carolina? We note at the outset that both courts below indicated that defendants had, indeed, violated this state's stated public policy that employees such as plaintiffs be paid at least the statutory minimum wage. Judge Morgan, in his order granting defendants' 12(b)(6) motion, said defendants' conduct "offends this Court, and also appears to violate the public policy of this State as set out in N.C.G.S. 95-25.3." Judge Morgan, however, felt constrained by the *Court of Appeals'* decision in *Coman*, which had yet to be reversed by this Court. *See Coman v. Thomas Manufacturing Co.*, 91 N.C. App. 327, 371 S.E.2d 731 (1988), *rev'd*, 325 N.C. 172, 381 S.E.2d 445 (1989). Under *Coman*, as decided by the Court of Appeals and interpreted by Judge Morgan, the public policy exception was limited to instances in which an employer attempted to interfere with an employee's testimony in a legal proceeding. The Court of Appeals in this case also expressed its strong disapproval of defendants' alleged conduct: "By this opinion we do not in any way condone an employer's violation of the minimum wage law with the resultant hardship and inconvenience to its employees, and we expressly denounce such unlawful coercive attempts to deprive employees of the wages to which they are lawfully entitled." *Amos*, 102 N.C. App. at 786, 403 S.E.2d at 567. The Court of Appeals, however, affirmed the trial court's dismissal of plaintiffs' complaint, holding that in order to state a valid claim for wrongful discharge, there must be no other remedy available. *Id.* at 787, 403 S.E.2d at 568. We address this issue later in the opinion.

Defendants argue in their brief that they did not violate public policy, as that term is defined in *Coman*, because the "alleged acts are peculiar to the plaintiff, are not injurious to the public, and do not in any way affect the public good." Defendants then

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

suggest that in order to state a valid claim for wrongful discharge in violation of public policy an employee must either be required to engage in unlawful conduct or the employer's conduct must threaten public safety. Defendants read *Coman* too narrowly. Although the definition of "public policy" approved by this Court does not include a laundry list of what is or is not "injurious to the public or against the public good,"[1] at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.

Article 2A of Chapter 95 of the North Carolina General Statutes, the Wage and Hour Act, provides:

(b) The public policy of this State is declared as follows: The wage levels of employees, hours of labor, payment of earned wages, and the well-being of minors are subjects of concern requiring legislation to promote the general welfare of the people of the State without jeopardizing the competitive position of North Carolina business and industry. The General Assembly declares that the general welfare of the State requires the enactment of this law under the police power of the State.

N.C.G.S. § 95-25.1(b) (1989).[2] Accordingly, the legislature set a minimum wage of $3.35 per hour effective 1 January 1983, with subsequent increases through 1 June 1989 to coincide with those of the federal Fair Labor Standards Act (FLSA) up to a maximum hourly wage of $4.00. N.C.G.S. § 95-25.3. Businesses covered by the FLSA are exempt from the state Wage and Hour Act. N.C.G.S. § 95-25.14(a)(1). Remedies under the FLSA are similar to those provided in the state statute. Thus, as recognized by the Court of Appeals, "[w]ithout question, payment of the minimum wage is the public policy of North Carolina." *Amos,* 102 N.C. App. at

---

1. Although it may be tempting to refine the definition of "public policy" in order to formulate a more precise and exact definition, we decline to do so. Any attempt to make the definition more precise would inevitably lead to at least as many questions as answers. True to the common law tradition, we allow this still evolving area of the law to mature slowly, deciding each case on the facts before us.

2. Various sections of the Wage and Hour Act have been amended since the filing of this lawsuit. All references to the Wage and Hour Act in this opinion are to the version in force at the time plaintiffs were allegedly fired for refusing to work for less than the minimum wage.

785, 403 S.E.2d at 567. We hold therefore that, taking plaintiffs' allegations as true, defendants violated the public policy of North Carolina by firing plaintiffs for refusing to work for less than the statutory minimum wage.

## II.

[2] Defendants argue that, even if their conduct violates public policy, plaintiffs have alternative remedies available and therefore should not be permitted to proceed under the common law theory of wrongful discharge. Defendants ask this Court to uphold the decision of the Court of Appeals, which established a two-part test for employees wishing to proceed under a theory of wrongful discharge in violation of public policy. Quoting a federal district court from Pennsylvania, the Court of Appeals held that the " 'application of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society.' " *Amos*, 102 N.C. App. at 787, 403 S.E.2d at 568 (quoting *Wehr v. Burroughs Corp.*, 438 F. Supp. 1052, 1055 (E.D. Pa. 1977), *aff'd as modified*, 619 F.2d 276 (3d Cir. 1980)). On the facts of this case, the Court of Appeals held that the state legislature had provided plaintiffs an adequate statutory remedy:

> Plaintiffs thus had two options: (i) to continue working and pursue their remedy [for backpay] under N.C.G.S. § 95-25.22, which would have made them whole, or (ii) to refuse to work and be fired. Plaintiffs chose the latter. They were not terminated in retaliation for filing a complaint. N.C.G.S. § 95-25.20(a), therefore, has no applicability.

*Amos*, 102 N.C. App. at 786, 403 S.E.2d at 567. The Court of Appeals then held that because plaintiffs had an adequate remedy at their disposal, they could not proceed under a theory of wrongful discharge in violation of public policy. *Id.* at 787, 403 S.E.2d at 568.

Although the Court of Appeals decided this case on the basis of a state statutory remedy, both parties now assert that the applicable statutory scheme may be the FLSA, 29 U.S.C. §§ 201-219 (1978), not the North Carolina Wage and Hour Act. If, as the parties now believe, defendant Oakdale Knitting is covered by the FLSA, it would be exempt from the state statute. N.C.G.S. § 95-25.14(a)(1). Because the record on appeal in this case does not contain sufficient information to determine whether Oakdale Knitting is covered by

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

the FLSA or the state Wage and Hour Act, we will address both statutory schemes.

In *Coman*, we held that an employee who has been fired in violation of public policy has a claim for wrongful discharge notwithstanding this state's allegiance to the employment-at-will doctrine. The issue now before this Court is whether *Coman* is limited to situations in which the fired employee has no other available remedy. The Court of Appeals added this limitation. *Amos*, 102 N.C. App. at 786-87, 403 S.E.2d at 567-68. Several courts in other jurisdictions have also limited the public policy exception, arguing that the rationale behind the exception is to provide a remedy for discharges in violation of public policy "which otherwise would not be vindicated by a civil remedy." *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 605, 561 A.2d 179, 180 (1989) (and cases cited therein); *see also Crews v. Memorex Corp.*, 588 F. Supp. 27, 29 (D. Mass. 1984) (wrongful discharge action recognized "in order to fill [a] legislative gap. When a statutory remedy is available, there is no gap, and the justification for judicial creativity is absent.") (citation omitted). Other courts have chosen not to add this limitation. *See Broomfield v. Lundell*, 159 Ariz. App. 349, 767 P.2d 697 (1988); *Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 689 P.2d 1292 (1984); *see also Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 533 (4th Cir. 1991), *rev'g* 724 F. Supp. 1185 (M.D.N.C. 1989) (Fourth Circuit, interpreting post-*Coman* North Carolina law, reversed district court's limitation of wrongful discharge claims to instances in which there was no alternative remedy, stating that it found "no North Carolina authority" for the addition of this limitation).

If the sole rationale for the adoption of the public policy exception in *Coman* was to provide a remedy where no other remedy existed, then the reasoning of the Court of Appeals would be persuasive. *Coman*, however, was not predicated on the "no alternative remedy" theory. Indeed, we noted in *Coman* that the fired employee arguably had an "additional remedy in the federal courts." *Coman*, 325 N.C. at 174, 381 S.E.2d at 446 (footnote omitted). Whether the plaintiff in *Coman* was without an additional state remedy[3]

---

3. The North Carolina Civil Liberties Union Foundation, in an amicus curiae brief, argued that defendant Thomas Manufacturing Company had violated both state and federal statutory law when it discharged plaintiff Coman. Thomas Manufacturing responded in its brief that, assuming state law applied, Coman not only

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

was not the key factor behind this Court's adoption of the public policy exception. The underlying rationale was the recognition that the judicially created employment-at-will doctrine had its limits and it was the role of this Court to define those limits. *See id.* at 177 n.3, 381 S.E.2d at 448 n.3 ("[t]his Court, not the legislature, adopted the employee-at-will doctrine in the first instance, [and thus] it is entirely appropriate for this Court to further interpret the rule."). Accordingly, we held that although " 'there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy.' " *Id.* at 175, 381 S.E.2d at 447 (quoting *Sides*, 74 N.C. App. at 342, 328 S.E.2d at 826). The public policy exception adopted by this Court in *Coman* is not just a remedial gap-filler. It is a judicially recognized outer limit to a judicially created doctrine, designed to vindicate the rights of employees fired for reasons offensive to the public policy of this State. The existence of other remedies, therefore, does not render the public policy exception moot.

Although we now hold that the existence of an alternative remedy does not *automatically* preclude a claim for wrongful discharge based on the public policy exception, we also hold that under certain circumstances a legislative remedy may be deemed exclusive. If federal legislation preempts state law under the Supremacy Clause, U.S. Const. art. VI, cl. 2, then state claims, such as one for wrongful discharge, will be precluded. *See English v. General Electric Co.*, 496 U.S. 72, 110 L. Ed. 2d 65 (1990). Additionally, if our state legislature has expressed its intent to supplant the common law with exclusive statutory remedies, then common law actions, such as wrongful discharge, will be precluded. *See Biddix v. Henredon Furniture Industries*, 76 N.C. App. 30, 331 S.E.2d 717 (1985) (vitality of common law actions for nuisance and continuing trespass dependent upon federal preemption and whether state Clean Water Act precludes common law civil actions). We hold therefore that absent (a) federal preemption or (b) the intent of our state legislature to supplant the common law with exclusive statutory remedies, the availability of alternative remedies does

had a federal remedy available, but also a state statutory remedy pursuant to the state Occupational Safety & Health Act, N.C.G.S. § 95-130(8), (9) (1989). Thus, Thomas Manufacturing argued, given the statutory remedies available, there was no need for this Court to create an exception to the employment-at-will doctrine. This is essentially the same argument defendant Oakdale Knitting makes in this case.

not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception. The availability of alternative common law and statutory remedies, we believe, supplements rather than hinders the ultimate goal of protecting employees who have been fired in violation of public policy.

As mentioned previously, the record on appeal does not contain sufficient information to determine whether Oakdale Knitting is covered by the FLSA or the state Wage and Hour Act. We therefore address both statutory schemes.

[3] Defendants argued before the Court of Appeals that the FLSA preempted state law and that the remedies contained in the state Wage and Hour Act were intended to be exclusive. In response to the federal preemption argument, plaintiffs argued that Congress, in adopting the FLSA, did not intend to "occupy the field," and therefore an action for wrongful discharge was not precluded. *See Webster v. Bechtel*, 621 P.2d 890 (Alaska 1980) (the FLSA does not preempt state law claims). The Court of Appeals, however, did not pass upon defendants' federal preemption argument, noting that defendants had failed to raise the issue before the trial court. *Amos*, 102 N.C. App. at 784, 403 S.E.2d at 566. The issue of federal preemption is a constitutional question and therefore will not be reviewed by this Court unless it affirmatively appears from the record that the issue was raised and passed upon in the court below. *Coman*, 325 N.C. at 171 n.1, 381 S.E.2d at 446 n.1; *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 428, 269 S.E.2d 547, 577 (1980). Because this issue was not passed upon by either the Court of Appeals or the trial court, it is not properly before this Court.

The Court of Appeals did, however, suggest that our state legislature intended the remedies in the Wage and Hour Act to be exclusive in all instances where an employer refuses to pay the minimum wage. *Amos*, 102 N.C. App. at 786, 403 S.E.2d at 567-68 ("The legislature having expressed its intent, however, we decline to extend the public policy exception to the employment at will doctrine to afford a cause of action in addition to that provided by statute."). We will therefore address the issue of whether our state legislature intended the Wage and Hour Act to supplant the common law with exclusive statutory remedies. We hold it did not.

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

In determining whether the state legislature intended to preclude common law actions, we first look to the words of the statute to see if the legislature expressly precluded common law remedies. The Wage and Hour Act, unlike the Workers' Compensation Act, does not expressly preclude common law remedies. *See* N.C.G.S. § 97-10.1 (1991) (common law rights and remedies precluded under Workers' Compensation Act). Because the legislature did not expressly preclude common law remedies, we "look to the purpose and spirit of the statute and what the enactment sought to accomplish, considering both the history and circumstances surrounding the legislation and the reason for its enactment." *Biddix*, 76 N.C. App. at 34, 331 S.E.2d at 720 (state Clean Water Act does not abrogate common law).

In February 1988, when defendants allegedly reduced plaintiffs' wages below the statutory minimum wage, plaintiffs' remedies under the Wage and Hour Act were as follows. Plaintiffs could have stayed on the job, working for $2.18 per hour, and pursued an action to recover unpaid wages. N.C.G.S. § 95-25.22. In its discretion, the court could have awarded exemplary damages in an amount "not in excess of the amount found to be due as provided above." N.C.G.S. § 95-25.22(a). Plaintiffs, in the discretion of the court, also could have recovered reasonable attorneys' fees. N.C.G.S. § 95-25.22(d). An employee who has been discharged in retaliation for filing a complaint or participating in an investigation under the Wage and Hour Act also has a statutory right to be reinstated. N.C.G.S. § 95-25.20(a). Because plaintiffs in this case did not file a complaint, this section presumably has no application. *See Amos*, 102 N.C. App. at 786, 403 S.E.2d at 567 (N.C.G.S. § 95-25.20(a) not applicable to this case). Judging from these statutory remedies, it seems apparent that the intent of the legislature was to provide an employee an avenue to recover back wages *while remaining employed*. The statute, as recognized by the Court of Appeals, provides *no remedy* for an employee who is discharged for refusing to work for less than the statutory minimum wage. *See id.* (plaintiffs had two options: continue working and seek backpay or refuse to work and be fired).

The strongest argument, however, that the legislature did not intend by its adoption of the Wage and Hour Act to supplant the common law claim of wrongful discharge in violation of public policy is also the most obvious: at the time section 95-25.22 was enacted in 1959 and 95-25.20 was enacted in 1979, neither this

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

Court nor the Court of Appeals had recognized the public policy exception to the employment-at-will doctrine. As the Supreme Court of Oregon succinctly stated in *Holien v. Sears, Roebuck and Co.*, 298 Or. at 96, 689 P.2d at 1303: "It seems elementary that before a legislative body can intend to eliminate certain forms of remedy it must be aware that such remedies exist." (Footnote omitted). We hold that the legislature, by enacting the Wage and Hour Act, did not intend to preclude wrongful discharge actions based on violation of the state's public policy requiring employers to pay their employees at least the statutory minimum wage.

III.

[4] The final issue before the Court is whether *Coman* recognized a separate and distinct claim for bad faith discharge. We hold it did not.

In *Coman,* we noted that this Court "has never held that an employee at will could be discharged in bad faith." *Coman,* 325 N.C. at 176, 381 S.E.2d at 448 (citing *Haskins v. Royster,* 70 N.C. 601 (1874)). We then recognized that courts in other states "have recognized wrongful discharge theories characterized either as the bad faith exception to the at-will doctrine or under the implied covenant of good faith and fair dealing." *Id.* at 177, 381 S.E.2d at 448 (citations omitted). Finally, we added, "[b]ad faith conduct should not be tolerated in employment relations, just as it is not accepted in other commercial relationships." *Id.* These statements were dicta; they were not relied upon for our ultimate holding that plaintiff had stated a valid claim for wrongful discharge based on the public policy exception to the employment-at-will doctrine.

Most courts interpreting *Coman* have recognized that our discussion of bad faith discharge was dicta, but have come to differing conclusions. *Compare Salt v. Applied Analytical, Inc.,* 104 N.C. App. 652, 412 S.E.2d 97 (1991) (disallowing tort claim for bad faith discharge), *cert. denied,* 331 N.C. 119, 415 S.E.2d 200 (1992); *English v. Gen. Elec. Co.,* 765 F. Supp. 293 (E.D.N.C. 1991) (disallowing tort claim for bad faith discharge); and *Haburjak v. Prudential Bache Sec., Inc.,* 759 F. Supp. 293 (W.D.N.C. 1991) (disallowing tort claim for bad faith discharge) *with Iturbe v. Wandel & Goltermann Technologies,* 774 F. Supp. 959 (M.D.N.C. 1991) (allowing claim for bad faith discharge); *see also,* Duncan Alford, Note, *Coman v. Thomas Manufacturing Co.: Recognizing a Public Policy Exception to the At-Will Employment Doctrine,* 68 N.C. L. Rev. 1178,

AMOS v. OAKDALE KNITTING CO.

[331 N.C. 348 (1992)]

1192 (1990) ("The language regarding bad faith was not necessary to the court's holding and may be weakened in future cases."). A few courts have not characterized our bad faith discussion as dicta and have indicated that *Coman* did recognize a distinct tort for bad faith discharge. *Riley v. Dow Corning Corp.*, 767 F. Supp. 735 (M.D.N.C. 1991); *McLaughlin v. Barclays American Corp.*, 95 N.C. App. 301, 382 S.E.2d 836, *disc. rev. denied*, 325 N.C. 546, 385 S.E.2d 498 (1989).

To repeat: our discussion of bad faith discharge in *Coman* was dicta. The issue in *Coman* was whether to adopt a *public policy exception* to the employment-at-will doctrine. In setting out the issue presented, we said: "Our present task is to determine whether we should adopt a public policy exception to the employment-at-will doctrine." *Coman*, 325 N.C. at 175, 381 S.E.2d at 447 (footnote omitted). We did. We did not recognize a separate claim for wrongful discharge in bad faith.

## IV.

To summarize: Firing an employee for refusing to work for less than the statutory minimum wage violates the public policy of North Carolina. Absent federal preemption or the intent of our legislature to supplant the common law with exclusive statutory remedies, the availability of alternative federal or state remedies does not prevent a plaintiff from seeking tort remedies for wrongful discharge based on the public policy exception to the employment-at-will doctrine. The issue of federal preemption is not properly before this Court and we decline to address the merits; however, we hold that the state legislature did not intend to preclude common law remedies when it adopted the Wage and Hour Act. Because plaintiffs' claim has not been determined to be preempted by federal law or supplanted by state legislation, the complaint was improperly dismissed by the trial court for failure to state a claim upon which relief can be granted. Finally, *Coman* did not recognize a separate and distinct claim for bad faith discharge.

We reverse the decision of the Court of Appeals and remand to that court for further remand to Superior Court, Surry County, for proceedings not inconsistent with this opinion.

Reversed and remanded.