CAROLYN G. SALTER, Plaintiff v. E & J HEALTHCARE, INC.,
D/B/A GREYSTONE MANOR, Defendants

No. COA02-88

(Filed 21 January 2003)

## 1. Employer and Employee— wrongful discharge—voluntariness—failure to sign letter

Plaintiff employee was terminated from her employment and did not voluntarily resign from her employment even though she failed to sign a letter given to her by defendant employer on 23 August 1999 giving plaintiff the options of signing the letter requiring her to take a leave of absence while her foot was injured with the hope that her job would be open when she returned or the option of not signing the letter and be fired.

## 2. Employer and Employee— wrongful discharge—retaliation for filing workers' compensation claim

The trial court did not err in a wrongful discharge action by granting summary judgment in favor of defendant employer even though plaintiff employee contends there was a genuine issue of material fact as to whether defendant took retaliatory action against her in violation of N.C.G.S. § 95-240 based on plaintiff filing a workers' compensation claim, because: (1) there is no close temporal connection between plaintiff's instituting a workers' compensation claim and her termination; (2) plaintiff offers little more than mere speculation that defendant gave her a letter requiring her to sign the letter and take a leave of absence or be terminated based on her filing a workers' compensation claim; (3) plaintiff was allowed to return to work after filing her workers' compensation claim, and defendant filed all necessary paperwork for plaintiff to receive benefits and plaintiff received them; and (4) it was not until the second injury occurred and plaintiff was out of work for a full week following a sustained period of light duty was she offered the letter, and plaintiff's assertions that one of defendant's employees was less than cordial does not raise a triable material issue of fact.

## 3. Employer and Employee— wrongful discharge—public policy violation—advocacy of Adult Care Home Residents' Bill of Rights

The trial court did not err by granting summary judgment in favor of defendant employer on plaintiff's claim for wrongful dis-

charge in violation of public policy under N.C.G.S. § 131D-21 based on plaintiff's contention that she was fired due to her activities in advocating the rights of patients at defendant's nursing homes under the Adult Care Home Residents' Bill of Rights, because: (1) there is no causal connection between plaintiff's alleged advocation and her termination; and (2) there must be something more than mere speculation that an employee was fired for an improper purpose.

**4. Employer and Employee— wrongful discharge—public policy violation—filing of workers' compensation claim**

The trial court did not err by granting summary judgment in favor of defendant employer on plaintiff employee's claim for wrongful discharge in violation of public policy under N.C.G.S. § 97-1 based on plaintiff's filing of a workers' compensation claim, because there must be something more than mere speculation that an employee was fired for an improper purpose.

Appeal by plaintiff from judgment entered 2 November 2001 by Judge Jack A. Thompson at the 15 October 2001 Civil Term of Robeson County Superior Court. Heard in the Court of Appeals 18 September 2002.

*Distefano & Erca, by Alison A. Erca, for plaintiff appellant.*

*Hopper & Hicks, LLP, by William L. Hopper, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiff Carolyn G. Salter appeals from an order granting summary judgment to defendant E & J Healthcare, Inc., d/b/a/ Greystone Manor entered 2 November 2001. Plaintiff filed suit on 12 July 2000 setting forth three claims: (1) wrongful discharge in violation of public policy based on N.C. Gen. Stat. § 97-1; (2) wrongful discharge in violation of public policy based on N.C. Gen. Stat. § 131D-19; and (3) retaliatory discharge in violation of the Retaliatory Employment Discrimination Act (REDA). The facts surrounding the parties and the complaint follow.

Defendant operates four rest home facilities in eastern North Carolina. One of these facilities is Greystone Manor, located in Red Springs, Robeson County.

SALTER v. E & J HEALTHCARE, INC.

[155 N.C. App. 685 (2003)]

Plaintiff holds a B.S. Degree in Psychology with a minor in gerontology. Plaintiff had been employed by defendant at the Greystone Manor as the activities coordinator since late 1996 or early 1997. She was also a member of the management team and did public relations for the facility.

While at work on 2 June 1999, plaintiff was exiting some offices when she slipped and fell on a wet floor. As a result of the fall, plaintiff broke her foot. While at the hospital following the accident, plaintiff attempted to give her insurance information to the hospital. She was informed by the hospital staff that she would be covered by workers' compensation, and that the hospital had no use for her own insurance information. Thus, it was at this time that plaintiff apparently learned that she was entitled to workers' compensation from defendant.

The facts surrounding plaintiff's workers' compensation claim differ between the parties. Plaintiff contends that on 3 June 1999, she returned to work and began filling out workers' compensation forms. In her deposition, plaintiff testified that her supervisor at Greystone Manor, Frances Ivey, believed that the slip and fall was plaintiff's fault. Plaintiff further testified that Ms. Ivey informed her "that it was very hard to get workman's comp, that it was hard to prove and that it was just a hassle; and that it was just going to be a very difficult situation." In addition, plaintiff alleged in her complaint that Ms. Ivey informed a coworker not to report to the company president that warning signs were not visible at the place where plaintiff fell. Plaintiff accuses Ms. Ivey of having a general aversion to her after the workers' compensation incident.

Frances Ivey denied making any such statements or having any such aversion toward plaintiff. Ms. Ivey testified in her deposition to the fact that she was in charge of filing workers' compensation claims at Greystone Manor, and that she did in fact fill out the paperwork for plaintiff. Throughout it has never been contested that plaintiff has failed to get all the workers' compensation to which she was entitled.

After plaintiff's injury, she continued to work at Greystone Manor, although she only performed light duty. Plaintiff has alleged that Ms. Ivey continued to be skeptical of the extent of her injury, while Ms. Ivey denied such. After two and one-half months of light duty, on 16 August 1999, plaintiff reinjured her foot while away from work when she tripped at her home. Her physician prescribed

one week of inactivity, spanning from 16 August to 23 August 1999. Plaintiff had a scheduled appointment with her physician on 24 August 1999, and planned to return to work after this appointment.

Prior to August 24th, however, plaintiff was summoned to work to pick up her check and discuss some things with Frances Ivey. On 23 August 1999, Ms. Ivey gave plaintiff her check along with a letter that had been faxed to her from defendant's head office. The letter stated:

> We acknowledge that you have been out of work for a period of time due to a foot injury. Our company will consider your leave of absence appropriate regarding the nature of the injury.
>
> Any leave of absence granted shall be without pay.
>
> You will be given first consideration for the position which was left, but cannot guarantee a job when the leave of absence is over. If such is available, you will be reinstated with no loss of seniority or pay status. If such a position is not available, re-instatement at a lessor position with a corresponding decrease in pay may be necessary. Eligibility for re-instatement is solely dependent upon availability of appropriate job openings, and the employer has no obligation beyond this.
>
> . . . .
>
> This release shall be binding upon and inure to the benefit of the parties, their successors, assigns, personal representatives, and heirs, and without limiting the generality of the foregoing officers, directors, employees and agents of the Company.
>
> Refusal to follow this procedure shall be considered insubordination and immediate dismissal.

Plaintiff claimed that Ms. Ivey demanded that she sign the letter, and that refusal to sign it immediately would result in termination. Ms. Ivey, after the fact, claims that the letter was intended for plaintiff to sign and take an unpaid leave of absence until she was able to work full-time. However, plaintiff submits that the letter is clear that she was to take a leave of absence with no assurances of a job when she returned if she signed, or she was to be immediately terminated if she refused to sign. Plaintiff refused to sign the letter. Instead, plaintiff asked to be allowed to remove her belongings from the premises. She was allowed to do so, as long as she told no one what had transpired. Ms. Ivey testified that plaintiff informed her that she had talked to a

lawyer about a potential suit and had decided against it, but now had changed her mind after receiving the letter.

In addition to her workers' compensation dispute with defendant's management, plaintiff also alleged in her complaint that throughout her employment with defendant, she was an advocate for the residents at the facility. According to plaintiff, this caused a great deal of resentment between her and Ms. Ivey, independent from the workers' compensation incident. Plaintiff alleged in her complaint that "Ms. Ivey, by her words and conduct, implied to plaintiff that plaintiff's advocacy of residents' rights was a threat to plaintiff's continued employment with defendant." Indeed, plaintiff testified that Ms. Ivey informed her that the nursing home business "was all about money and not residents, and if [plaintiff] cared more for the residents, [she] wouldn't have a future in this business."

It is on all these facts that plaintiff filed her complaint. Defendant filed its answer on 14 September 2000, and its motion for summary judgment on 26 June 2001, on the ground that there was no genuine issue as to any material fact. Judge Jack Thompson heard the motion and granted defendant summary judgment on 2 November 2001. Plaintiff appeals on the ground that there are genuine issues of material fact.

> Summary judgment is proper where there is no genuine issue as to any material fact. An issue is genuine where it is supported by substantial evidence. A genuine issue of material fact is of such a nature as to affect the outcome of the action. The moving party bears the burden of establishing the lack of a triable issue of fact. The motion must be denied where the non-moving party shows an actual dispute as to one or more material issues. As a general principle, summary judgment is a drastic remedy which must be used cautiously so that no party is deprived of trial on a disputed factual issue.

*Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 680-81, 535 S.E.2d 357, 361 (citations omitted), *appeal dismissed, disc. review denied*, 353 N.C. 265, 546 S.E.2d 102 (2000).

I.

[1] Prior to addressing plaintiff's causes of action, there is an initial point of contention between the parties as to whether plaintiff voluntarily resigned or was in fact terminated as a result of the events on 23 August 1999. Plaintiff claims that she was terminated

because she did not sign the letter, while defendant maintains that plaintiff voluntarily ceased her employment by failing to comply with defendant's policies.

It appears to this Court that the letter given to plaintiff on 23 August 1999 left her with two options: (1) sign the letter, and be put on leave of absence and get better, then hope she can get her job back since it was clearly not promised that it would be held open; or (2) not sign the letter and be fired. While defendant appears to claim that it was prepared to immediately take plaintiff back as a full-time employee as soon as she was ready to return to work, nothing in that letter sustains this assertion. By the letter's terms and Ms. Ivey's explanation of the terms, failure to sign meant immediate dismissal. Plaintiff failed to sign. While the decision not to sign was voluntary on her part, defendant was the party who dictated the result here by the language in the letter. Coming into court and now contending that by voluntarily failing to sign the letter plaintiff has somehow foregone any potential rights is disingenuous.

Plaintiff was terminated from her employment with defendant when she did not sign the letter, as dictated by its terms. Thus, we address the balance of plaintiff's appeal.

II.

[2] Plaintiff contends that the trial court erred in granting summary judgment to defendant because genuine issues of material fact existed as to whether defendant took retaliatory action against her because she filed a workers' compensation claim, in violation of REDA, N.C. Gen. Stat. § 95-240, et. seq. (2001).

The North Carolina Retaliatory Employment Discrimination Act ("REDA"), enacted in 1992, prohibits discrimination against an employee who has filed a workers' compensation claim. In pertinent part, the Act provides:

(a) No person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to do any of the following:

(1) File a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to any of the following:

a. Chapter 97 of the General Statutes.

REDA replaced North Carolina General Statutes section 97-6.1, the purpose of which was to promote an open environment in which employees could pursue remedies under the Workers' Compensation Act without fear of retaliation from their employers. The former law merely protected employees against discharge and demotion. By enacting REDA, however, the General Assembly expanded the definition of retaliation to include "the discharge, suspension, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment."

In a claim brought pursuant to the former provision, section 97-6.1(a), this Court stated that an employee bears the burden of proof in retaliatory discharge actions. "The statute does not prohibit all discharges of employees who are involved in a workers' compensation claim, it only prohibits those discharges made *because* the employee exercises his compensation rights." Furthermore, our appellate courts indicated in applying the former provision that a plaintiff fails to make out a case of retaliatory action where there is no close temporal connection between the filing of the claim and the alleged retaliatory act.

*Johnson,* 139 N.C. App. at 681-82, 535 S.E.2d at 361 (citations omitted).

Plaintiff submits that she had filed a workers' compensation claim which her employer tried to discourage, and was working light duty and receiving benefits when she was presented with a release of claims to sign, or, alternatively, with dismissal. It is noted that plaintiff has complied with procedural requirements with the N.C. Commission of Labor, as required by REDA.

It is undisputed that plaintiff filed a workers' compensation claim and received benefits. Plaintiff then returned to work on light duty for two and one-half months. After that period of time, she reinjured her foot away from work, and was out for a week before being given the option of being placed on administrative leave.

Several things are wrong with plaintiff's claim. First, there is no close temporal connection between plaintiff's instituting a workers' compensation claim and her termination. *Johnson,* 139 N.C. App. at 683, 535 S.E.2d at 362 (no close temporal connection between claim and adverse action after one year); *Shaffner v. Westinghouse Electric*

*Corp.*, 101 N.C. App. 213, 216, 398 S.E.2d 657, 659 (1990), *disc. review denied*, 328 N.C. 333, 402 S.E.2d 839 (1991) (no close temporal connection between claim, 18 April 1987, and termination, 29 June 1987, approximately two and one-half months). Second, plaintiff offers little more than mere speculation that defendant gave her the letter because she filed a workers' compensation claim. Nothing in the letter refers to workers' compensation. Plaintiff was allowed to return to work after filing her workers' compensation claim. Defendant filed all necessary papers for plaintiff to receive benefits, and plaintiff indeed received them. It was not until the second injury occurred and plaintiff was out of work for a full week following a sustained period of light duty was she offered the letter. To recover, plaintiff "must show that her discharge was caused by her good faith institution of the workers' compensation proceedings . . . ." *Abels v. Renfro Corp.*, 108 N.C. App. 135, 143, 423 S.E.2d 479, 483 (1992), *aff'd in part, rev'd in part*, 335 N.C. 209, 436 S.E.2d 822 (1993). This she fails to do. Despite plaintiff's assertions that one of defendant's employees was less than cordial, her allegations do not raise a triable, material issue of fact. *See Brooks v. Stroh Brewery Co.*, 95 N.C. App. 226, 237, 382 S.E.2d 874, 882, *disc. review denied*, 325 N.C. 704, 388 S.E.2d 449 (1989) ("This Court is not unmindful that circumstantial evidence is often the only evidence available to show retaliation against protected activity. Nevertheless, the causal connection must be something more than speculation . . . ."). Thus, summary judgment on plaintiff's REDA claim is affirmed.

### III.

Plaintiff's final assignments of error contend that the trial court erred by granting summary judgment on its other two causes of action: Wrongful discharge in violation of public policy based on N.C. Gen. Stat. § 131D-21 (2001); and wrongful discharge in violation of public policy based on N.C. Gen. Stat. § 97-1 (2001).

North Carolina is an employment-at-will state. Our Supreme Court "has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." Limited exceptions have been adopted to this bright-line rule.

First, as stated above, parties can remove the at-will presumption by specifying a definite period of employment con-

SALTER v. E & J HEALTHCARE, INC.

[155 N.C. App. 685 (2003)]

tractually. Second, federal and state statutes have created exceptions prohibiting employers from discharging employees based on impermissible considerations such as the employee's age, race, sex, religion, national origin, or disability, or in retaliation for filing certain claims against the employer. Finally, this Court has recognized a public-policy exception to the employment-at-will rule.

Public policy is defined as "the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." There is no specific list of what actions constitute a violation of public policy. However, wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer[']s request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy[.]

*Ridenhour v. IBM Corp.*, 132 N.C. App. 563, 568-69, 512 S.E.2d 774, 778 (citations omitted), *disc. review denied*, 350 N.C. 595, 537 S.E.2d 481 (1999). Under this public policy exception, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy.

To establish a *prima facie* case of retaliation, it must be shown that (1) the plaintiff engaged in a protected activity, (2) the employer took adverse action, and (3) there existed a causal connection between the protected activity and the adverse action.

*Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 690, 504 S.E.2d 580, 586 (1998), *disc. review denied*, 350 N.C. 91, 527 S.E.2d 662 (1999).

[3] Plaintiff's first argument under the public policy exception is that she was fired because of her activities in advocating the rights of patients at defendant's nursing homes in accordance with the Adult Care Home Residents' Bill of Rights, N.C. Gen. Stat. § 131D-19, *et. seq.* (2001).

The intent behind the Adult Care Home Residents' Bill of Rights is clearly set forth in N.C. Gen. Stat. § 131D-19 (2001). The Bill of Rights is to "promote the interests and well-being of the residents in adult care homes," to see that the residents' civil and religious liberties are not infringed, and ensure that the "facility shall encourage and assist the resident in the fullest possible exercise of these rights."

N.C. Gen. Stat. § 131D-19. This statute also expresses its intent to develop rules, through the Social Security Commission, to "encourage every resident's quality of life, autonomy, privacy, independence, respect, and dignity" and provide the resident's diverse housing opportunities, freedom from "abuse, neglect, and exploitation," care that focuses more on the individual, with state and county oversight. *Id.* N.C. Gen. Stat. § 131D-21 provides the rights that every person shall have while a resident of an adult care facility. N.C. Gen. Stat. § 131D-21.

It appears clear to this Court that a situation could easily arise in which an employee could base a public policy exception to the employment at-will doctrine upon violations of the Adult Care Home Residents' Bill of Rights. *See Considine v. Compass Grp. USA, Inc.,* 145 N.C. App. 314, 319-22, 551 S.E.2d 179, 183-84, *aff'd,* 354 N.C. 568, 557 S.E.2d 528 (2001) (A plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee.). If an employee participated in advocating patient's rights under the Adult Care Home Resident's Bill of Rights and suffered retaliation from the employer, a cause of action could presumably be maintained.

However, plaintiff in the present case is unable to do so because there is no causal connection between her alleged advocation and her termination. Plaintiff alleged that residents were banned from receiving food from outside the facility, some residents had their water intake limited, and that Ms. Ivey was overly controlling the patients, informing plaintiff that the adult care facility business was all about money and not the residents. While we abhor the alleged callousness of plaintiff's supervisor, there is no evidence that any violations of the Bill of Rights occurred. Indeed, plaintiff admitted not knowing the dietary needs and requirements of the patients, nor knowing of any incident where defendant failed to meet such requirements. There are no substantiated violations on the record. "Any exception to the at will employment doctrine 'should be adopted only with substantial justification grounded in compelling considerations of public policy.' " *Considine,* 145 N.C. App. at 321, 551 S.E.2d at 184 (quoting *Kurtzman v. Applied Analytical Industries, Inc.,* 347 N.C. 329, 334, 493 S.E.2d 420, 423 (1997), *reh'g denied,* 347 N.C. 586, 502 S.E.2d 594 (1998)).

Further, there is still nothing connecting these actions to her termination. Again, we note that there must be something more before us than mere speculation that an employee was fired for an

improper purpose. *See Brooks*, 95 N.C. App. at 237, 382 S.E.2d at 882; *see also Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999) ("[S]omething more than a mere statutory violation is required to sustain claim . . . . An employer wrongfully discharges an at-will employee if the termination is done for 'an *unlawful reason* or *purpose* that contravenes public policy.' "). *Id.* (citation omitted). Even when taken in the light most favorable to plaintiff, the evidence does not sustain a violation of the Adult Care Home Resident's Bill of Rights, nor does it show that plaintiff's advocacy was a substantial factor in her termination. Thus, plaintiff's argument fails on this point.

[4] Plaintiff's second argument under the public policy exception is that she was fired because she filed a workers' compensation claim under N.C. Gen. Stat. § 97-1, *et seq.*, the North Carolina Workers' Compensation Act, and that it is against the public policy of North Carolina to retaliate against an employee for filing a workers' compensation claim.

The public policy to which plaintiff relies upon in this argument is the very public policy behind REDA when it was created by the General Assembly, as discussed above in section II, and of its predecessor, N.C. Gen. Stat. § 97-6.1. In light of this fact, defendant contends that North Carolina does not recognize a public policy exception to the employment at-will doctrine distinct from a retaliatory discharge claim under REDA. Defendant argues that because the General Assembly "has expressed its intent to supplant the common law with exclusive statutory remedies, then common law actions, such as wrongful discharge, will be precluded." *See Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 356, 416 S.E.2d 166, 171 (1992).

Defendant's argument overlooks the portion of REDA in N.C. Gen. Stat. § 95-244, entitled "Effect of Article on other rights." N.C. Gen. Stat. § 95-244 (2001). It provides:

> Nothing in this Article shall be deemed to diminish the rights or remedies of any employee under any collective bargaining agreement, employment contract, other statutory rights or remedies, or at common law.

*Id.* It appears that our General Assembly not only did not expressly supplant common law remedies, it expressly allowed them. Thus, it would be possible for a plaintiff to maintain a REDA claim *and* a claim for wrongful discharge for filing a workers' compensation suit

based on the public policy exception to employment at-will doctrine *if* such a claim was tenable at common law. *See Amos*, 331 N.C. at 357, 416 S.E.2d at 171 ("The availability of alternative common law and statutory remedies, we believe, supplements rather than hinders the ultimate goal of protecting employees who have been fired in violation of public policy.").

In 1978, this Court issued its decision of *Dockery v. Table Co.*, 36 N.C. App. 293, 244 S.E.2d 272, *disc. review denied*, 295 N.C. 465, 246 S.E.2d 215 (1978). The plaintiff filed a complaint against defendant, his former employer, alleging that he "was fired from his job in retaliation for his pursuit of remedies made available to him by the North Carolina Workmen's Compensation Act after receiving injuries on the job." *Id.* at 293, 244 S.E.2d at 273. The question before this Court was "whether the plaintiff's complaint sets forth a claim upon which relief can be granted[.]" *Id.* at 294, 244 S.E.2d at 273. This Court rejected the plaintiff's theory of "retaliatory discharge" as a device to avoid statutory workers' compensation obligations under N.C. Gen. Stat. § 97-6, which is the same today as it was then. It held that in the absence of a statutory provision allowing such a suit, being indicative of the General Assembly's intent, the employment at-will doctrine overcomes a claim for retaliatory discharge. Essentially, the *Dockery* holding is that there is no common law right to retaliatory discharge as an exception to the at-will employment doctrine.

Since the courts in *Dockery* left the problem to the General Assembly to fix, *see id.* at 298-99, 244 S.E.2d at 276-77, it did so the next year in 1979 by enacting N.C. Gen. Stat. § 97-6.1.[1] (Later, after a disastrous fire at a plant in Hamlet, N.C., the General Assembly repealed § 97-6.1 and strengthened the cause of action by creating REDA in 1992.)

After § 97-6.1 was enacted, this Court revisited the area in *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. review*

---

1. § 97-6.1 **Protection of claimants from discharge or demotion by employers.**

(a) No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the North Carolina Workers' Compensation Act, or has testified or is about to testify in any such proceeding.

(b) Any employer who violates any provision of this section shall be liable in a civil action for reasonable damages suffered by an employee as a result of the violation, and an employee discharged or demoted in violation of this section shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

*denied,* 314 N.C. 331, 333 S.E.2d 490 (1985), *overruled on other grounds,* 347 N.C. 329, 493 S.E.2d 420 (1997). *Sides* broke with the *Dockery* strict adherence to the employment at-will doctrine, noting the General Assembly's willingness to alter the General Statutes to protect the rights which it had established. Thus, *Sides* assumed that the General Assembly favored the enforcement of the law by "all legitimate and customary means," and held that:

> [W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Id.* at 342, 328 S.E.2d at 826.

This reasoning was adopted by our Supreme Court in *Coman v. Thomas Manufacturing Co.,* 325 N.C. 172, 381 S.E.2d 445 (1989). Thus, the wrongful discharge cause of action and public policy exception to the employment at-will doctrine became part of the common law of North Carolina. *See Amos,* 331 N.C. 348, 416 S.E.2d 166. Plaintiffs are now allowed to maintain suits under narrow exceptions to the at-will doctrine grounded in public policy. *See, e.g. Deerman v. Beverly California Corp.,* 135 N.C. App. 1, 518 S.E.2d 804 (1999), *disc. review denied,* 351 N.C. 353, 542 S.E.2d 208 (2000); *Vereen v. Holden,* 121 N.C. App. 779, 468 S.E.2d 471 (1996), *disc. review allowed and remanded,* 345 N.C. 646, 483 S.E.2d 719 (1997); *Lenzer v. Flaherty,* 106 N.C. App. 496, 418 S.E.2d 276, *disc. review denied,* 332 N.C. 345, 421 S.E.2d 348 (1992).

Thus, it arguably appears that a claim of wrongful discharge based upon North Carolina public policy of not punishing employees for exercising their statutory rights under the Workers' Compensation Act was tenable at common law. However, we do not decide that issue definitively here, because even if such a cause of action exists, plaintiff's evidence would still fail. As is the problem with plaintiff's other claims, mere speculation will not survive summary judgment.

This assignment of error is overruled.

Affirmed.

Judges TYSON and BRYANT concur.