GREGORY SCOTT KRANZ, Plaintiff v. HENDRICK AUTOMOTIVE GROUP, INC.; and
JERRY HOLLIFIELD, Defendants

No. COA08-253

(Filed 7 April 2009)

**1. Employer and Employee— wrongful discharge—failure to show public policy violations—summary judgment**

The trial court did not err in a wrongful discharge case by granting summary judgment in favor of defendants even though plaintiff contends he presented ample evidence to show that he was dismissed in violation of established public policy because plaintiff failed to show that: (1) defendant HAG actually violated state or federal law; (2) HAG's policies violated state or federal law; (3) HAG requested that plaintiff violate any law; (4) plaintiff ever raised the possibility with HAG that it was violating state or federal law; or (5) that any other basis existed for suggesting a violation of public policy.

**2. Employer and Employee— failure to pay bonus after termination—summary judgment**

Plaintiff former at-will employee was not entitled to receive a bonus under his compensation plan where he was terminated prior to the annual bonus payment date and his compensation plan stated that he "must be an employee on each payment date in order to received the bonuses."

Appeal by plaintiff from judgment entered 21 September 2007 by Judge Timothy Patti in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 September 2008.

*Robertson, Medlin & Blocker, PPLLC, by Jonathan Wall, for plaintiff.*

*Ogletree, Deakins, Nash, Smoak, & Stewart, PC, by David B. Hawley, for defendant.*

ELMORE, Judge.

Gregory Scott Kranz (plaintiff) appeals from an order granting a motion for summary judgment by Hendrick Automotive Group, Inc. (HAG), and Jerry Hollifield (together, defendants). For the reasons below, we affirm.

I.

Plaintiff was employed by defendant HAG in its information technology department beginning in 2000. From 2000 to 2005, plaintiff worked under the company's chief financial officer; in 2005, he was promoted to vice president of information technology.

Some time in 2005, plaintiff recommended to defendants that the procedures for authorizing users and access to certain databases of customer information be updated. In March and April 2006, plaintiff brought concerns regarding the classification of certain fixed assets for depreciation purposes to an outside firm for an outside assessment of the issues. In April 2006, plaintiff again raised the issue of access to customer databases at a strategy meeting.

On 18 May 2006, plaintiff was terminated by defendant HAG for failing to meet certain deadlines. Plaintiff brought suit for wrongful discharge on 21 June 2006. On 21 September 2007, defendants' motion for summary judgment was granted. Plaintiff appeals that ruling.

II.

A.

[1] Plaintiff first argues that the trial court erred in granting summary judgment to defendants as to his wrongful discharge claim because he presented ample evidence to show that he was dismissed in violation of established public policy. We disagree.

Specifically, plaintiff argues that he was wrongfully discharged due to his insistence that defendants comply with certain laws, an action which he argues violated our state's public policy.

> In North Carolina, the employer-employee relationship is governed by the at-will employment doctrine, which states that "in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." However, our Supreme Court has recognized a cause of action for wrongful discharge in violation of the public policy of North Carolina.

> "There is no specific list of what actions constitute a violation of public policy. . . . However, wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer's request, . . . (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy[.]"

*Whitings v. Wolfson Casing Corp.*, 173 N.C. App. 218, 221, 618 S.E.2d 750, 752-53 (2005) (citations omitted; alterations in original). Further, "[t]he public policy exception to the at-will employment doctrine is confined to the express statements contained within our General Statutes or our Constitution." *Id.* at 222, 618 S.E.2d at 753.

Based on our review of the evidence submitted by plaintiff, we must conclude that he has failed to present a sufficient forecast of evidence to establish a wrongful discharge claim. "Under [the] public policy exception, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy." *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003). Plaintiff has asserted that he was fired for insisting that HAG comply with (1) state and federal laws requir-

ing that HAG ensure the security of sensitive client information maintained in its computer database and (2) state and federal laws requiring proper classification and depreciation of fixed assets for tax and banking purposes.

With respect to customer privacy, plaintiff presented an affidavit of F. Stan Wentz, a certified information system security professional. Mr. Wentz stated that "internal controls over the safeguarding of sensitive customer [information] at HAG [were] not functioning in accordance with stated policy and regular practices of other entities." In addition, after noting that sensitive customer information was not encrypted, Mr. Wentz stated: "Most companies encrypt or securely isolate sensitive customer information to protect that data in case of a security breach." Mr. Wentz never stated that HAG was violating any state or federal law regarding security of sensitive client information. At most, he indicated that HAG was violating its own policies and not acting in a manner consistent with what other companies or entities were doing.

Plaintiff's affidavit likewise does not state that HAG was violating any law regarding sensitive customer information. In his deposition, when asked whether he had ever suggested to anyone at HAG that HAG was violating any data privacy law, he testified that he did not know that he "would have used that terminology" and the he was "not sure [he] ever framed it as a privacy issue but customer access, third-party access was discussed." He repeatedly indicated that the only violations of data privacy laws that he remembered complaining about involved "do not call" laws—not the issue relied upon by plaintiff in his wrongful discharge action.

Thus, although plaintiff points to various state and federal statutes regarding the privacy of customer information, he has not shown any violation of those laws or that he was even asked to violate those laws. It is not sufficient to simply point to public policy that may be implicated in issues that an employee has raised. The employee must show that "the public policy of North Carolina was contravened when defendant terminated plaintiff from his at-will employment." *McDonnell v. Tradewind Airlines, Inc.*, 194 N.C. App. —, —, 670 S.E.2d 302, 307 (2009). Plaintiff has failed to make that showing here and, therefore, summary judgment was appropriate. *See Salter*, 155 N.C. App. at 694, 575 S.E.2d at 52 (affirming grant of summary judgment when plaintiff failed to substantiate any statutory violations even though the statute at issue could be a source of public policy for purposes of wrongful discharge claim).

In addition, in *Garner v. Rentenback Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999), our Supreme Court held that a violation of a statute, standing alone, is not sufficient for a wrongful discharge claim, but rather there must be "a degree of intent or wilfulness on the part of the employer." In that case, because the plaintiff had not shown that the defendant employer "knew, or even suspected" that it had violated the statute at issue, the trial court properly granted summary judgment on the wrongful discharge in violation of public policy claim.

In this case, in plaintiff's deposition, when asked about the response of HAG when he raised "the third-party access issue" (the issue now couched as a violation of data privacy laws), he responded: "I don't think they understood, had any idea what I was talking about." On another occasion, when asked what reception he had received when expressing privacy concerns to the executive committee, he replied: "Marginal, marginal reception. I don't think people actually understood the significance of the issue." Thus, even if plaintiff had presented evidence of a violation of state or federal privacy laws, he has failed to demonstrate that HAG knew of the violations and, therefore, summary judgment was also proper under *Garner* as to this public policy theory.

With respect to plaintiff's fixed assets contentions, plaintiff submitted the affidavit of John C. Compton, a certified public accountant. Mr. Compton reviewed HAG documents regarding its internal controls over the accounting for fixed assets. He concluded that "internal control over fixed assets at Hendrick Auto Group (HAG) was not functioning in accordance with stated policy and regular practices of other entities." According to Mr. Compton, "[s]uch lack of control has the potential for causing errors in accurately reporting information to outside parties such as federal, state and local governments, thereby causing possible improper reporting of tax liabilities to those governments."

In addition to Mr. Compton's affidavit, plaintiff asserted in his own affidavit that he was told by a person in HAG's accounting department that "the Fixed Asset System had been 'screwed up for years.' " In plaintiff's deposition, he indicated only that he raised the issue of fixed assets because he found they were being miscategorized, thereby creating a potential for inaccurate information and depreciation. When asked if he ever told Mr. Hollifield that HAG was violating any law through its Fixed Asset System, he said: "I don't know if I phrased it quite like that." In an e-mail upon which

plaintiff relies, he sought authorization to hire an accountant to assist him with the categorization of IT assets because correcting the problem could lead to cost savings. The e-mail did not reference any violation of law or any potential for misreporting of financial data to the government.

Although plaintiff, on appeal, cites numerous state statutes regarding proper and accurate filing of tax returns and argues that he was attempting to ensure that "perceived tax reporting improprieties" did not go "unchecked," his summary judgment showing included no evidence of any "tax reporting improprieties." Indeed, he presented no evidence that any law, state or federal, was violated, or even that HAG was failing to comply with Generally Accepted Accounting Principles. His expert witness's affidavit indicated only that HAG was violating its own policies and that its accounting was inconsistent with how other companies handled fixed assets. While the expert stated that the internal controls were such that improper tax reporting could *possibly* occur, he never concluded that improper tax reporting necessarily would occur or had occurred. Thus, as with the data privacy issue, plaintiff failed to make any showing that any state or federal law was violated as to the reporting of fixed assets or more generally as to tax reporting.

In short, plaintiff failed to show (1) that HAG actually violated state or federal law, (2) that HAG's policies violated state or federal law, (3) that HAG requested that plaintiff violate any law, (4) that plaintiff ever raised the possibility with HAG that it was violating state or federal law, or (5) that any other basis exists for suggesting a violation of public policy. Plaintiff's general assertions of wrongdoing by defendants are insufficient to place his discharge in the narrow public policy exception carved out by our case law. As such, we overrule this assignment of error.

B.

[2] Plaintiff next argues that the trial court erred in granting summary judgment as to plaintiff's breach of contract claim. This argument is without merit.

Plaintiff signed a compensation plan for 2005, then a new compensation plan for 2006. Plaintiff's compensation plan for 2006 lists his salary and benefits, then, under "Bonus," states: "Bonuses to be determined based on meeting defined objectives. *You must be an employee on each payment date in order to receive the bonuses.*" The bonus would have been paid at the end of the calendar year.

Plaintiff's employment with defendant ended on 18 May 2006. As such, regardless of whether plaintiff had earned the annual bonus in the five and a half months of 2006 he worked, by the terms of his compensation plan, he was not entitled to the bonus. We overrule this assignment of error.

Affirmed.

Judges HUNTER, Robert C., and GEER concur.