TURNER O. WILEY, PLAINTIFF v. UNITED PARCEL SERVICE, INC., DEFENDANT

No. COA03-516

(Filed 4 May 2004)

**Employer and Employee— employment discrimination—retaliatory action—judicial estoppel**

The trial court did not err by granting summary judgment in favor of defendant employer in an employment discrimination action based on alleged retaliation for filing a workers' compensation claim, because: (1) plaintiff employee cannot establish that defendant's failure to return plaintiff to work constituted an adverse employment action nor can plaintiff demonstrate that the alleged retaliatory action was taken based on the fact that he exercised his workers' compensation rights; (2) defendant's failure to return plaintiff to work as a fueler was the result of his physicians' recommendations and plaintiff's own statements; (3) although plaintiff pointed to three other positions that he believes that he could do, he failed to offer any evidence that any one of the positions currently exists, is vacant, and is within his physical capabilities without modification; (4) unlike the Americans with Disabilities Act under 42 U.S.C. §§ 12101 to -12213, the Retaliatory Employment Discrimination Act (REDA) under N.C.G.S. §§ 95-240 to -245 does not require an employer to make an accommodation for an employee; (5) REDA does not prohibit all discharges of employees who are involved in a workers' compensation claim, but only prohibits those discharges made because the employee exercises his compensation rights; (6) plaintiff offered no evidence showing that defendant had a retaliatory motive, he never discussed his workers' compensation claim with anyone at the company, and he admits that no one at the company suggested that he should not file a workers' compensation claim; (7) defendant's attempts to identify a position for plaintiff that met all of his medical restrictions demonstrates a lack of retaliatory intent, and plaintiff has offered no circumstantial evidence otherwise; (8) judicial estoppel is inapplicable when defendant's position in the arbitration case was consistent with its position in the present case, and the record does not reflect defendant's position in plaintiff's claim before the Employment Security Commission for unemployment benefits; and (9) although findings of fact and conclusions of law are not necessary in an order determining a motion for summary judg-

ment, such findings and conclusions do not render a summary judgment void or voidable and may be helpful if the facts are not at issue and support the judgment as they did in this case.

Appeal by plaintiff from judgment entered 17 March 2003 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 17 March 2004.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellant.*

*Alston & Bird LLP, by Brian D. Edwards and Meredith S. Jeffries, for defendant-appellee.*

MARTIN, Chief Judge.

On 6 October 2000, plaintiff filed an employment discrimination complaint with the North Carolina Department of Labor alleging that defendant United Parcel Service, Inc. (UPS) had discriminated against him in retaliation for his having filed a workers' compensation claim. After receiving a right to sue letter in December 2000, plaintiff filed this action, seeking money damages and injunctive relief, pursuant to the North Carolina Retaliatory Employment Discrimination Act (REDA). N.C. Gen. Stat. §§ 95-240 to -245 (2003). Plaintiff alleged that defendant had violated N.C. Gen. Stat. § 95-241(a)(1a) by refusing to return him to work as a retaliatory action for filing a workers' compensation claim. Defendant filed an answer, denying plaintiff's allegations, and subsequently moved for summary judgment.

The materials before the trial court disclose that plaintiff, who had been an employee of UPS since 1975, suffered a seizure while driving a UPS package car in March 1985. When plaintiff returned to work, he was unable to operate a commercial vehicle pursuant to UPS and federal regulations, 49 C.F.R. § 391.41, due to his use of seizure control medication. In order to accommodate his medical restrictions, UPS created a full time position for him by combining part time positions in the car wash and package handling areas of the facility. Plaintiff subsequently suffered two back strains and an injury to his shoulder.

Despite plaintiff's medical restrictions due to his seizures, his back and shoulder injuries, and his medical need to use the restroom frequently, UPS accommodated plaintiff in non-driving positions from 1985 until 1997. UPS terminated plaintiff in April 1997,

but rehired him in February 1999. In his new position as a car-wash fueler, plaintiff pumped diesel fuel into UPS vehicles and logged the information.

On 30 August 2000, while fueling UPS tractor-trailers, plaintiff allegedly suffered another seizure which caused a fuel spill. Although plaintiff's personal physician, Dr. Edward D. Hill, Jr., released him to return to work that same day, UPS required a company-approved doctor to examine him before he could return. On 8 September 2000, Dr. George Whittenburg, the company-approved physician, examined plaintiff and determined he should not be allowed to work at heights, with hazardous materials or machinery, or in water. In addition, Dr. Whittenburg limited plaintiff to lifting objects less than thirty pounds.

Under the Collective Bargaining Agreement provision between UPS and the union to which plaintiff belonged, in cases where a dispute arises between the company's doctor and an employee's doctor, a third doctor, whose opinion is binding upon all parties, is selected to evaluate the employee. Dr. Carlo P. Yuson examined plaintiff on 4 October 2000 and concluded that plaintiff should not be allowed to handle hazardous material, to work at heights, to work at extreme temperatures or to drive. On 20 November 2000, Dr. Hill, plaintiff's personal physician, reversed his earlier decision and concluded that plaintiff could not return to work where he was "exposed to noxious diesel fuel, as it may have been a precipitant" for his seizures.

On 10 September 2000, plaintiff filed a workers' compensation claim, which he amended on 8 November 2000, alleging that the exposure to diesel fuel fumes was a significant contributing factor to the onset of his seizure on 30 August 2000. He also claimed that the stress of his work since February 1999 "activated and accelerated the seizure he experienced."

After considering the restrictions placed upon plaintiff by the physicians, UPS determined that plaintiff could not return to work in his job as a fueler because the job could not be performed without working with diesel fuel, a hazardous material. Robert Kociolek (Kociolek), UPS's District Human Resources Manager of the West Carolina District, tried to identify a position for plaintiff that would accommodate his medical restrictions. Kociolek considered positions in the feeder division but determined that such positions required driving and/or handling of hazardous materials. He also considered positions as a car washer, operations clerk and package handler, but

such positions were either not available or they required the ability to lift packages in excess of thirty pounds. Kociolek ruled out a position as a small sorter because, among other reasons, plaintiff had previously informed UPS he was unable to work in that area due to the lack of close restroom facilities. In December 2000, Kociolek, having been unable to identify a position for plaintiff, sent plaintiff a letter informing him of this fact and asking him if there were any accommodations that could be made that would enable him to return to work. Plaintiff did not respond. Since UPS has been unable to identify a position meeting plaintiff's needs, plaintiff has not returned to work since August 2000.

The trial court granted defendant's motion for summary judgment. Plaintiff appeals.

---

Plaintiff argues that the trial court erred in granting summary judgment because there was a genuine issue of material fact in dispute. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). The evidence must be viewed in the light most favorable to the non-moving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

The North Carolina Retaliatory Employment Discrimination Act (REDA) prohibits discrimination or retaliation against an employee for filing a worker's compensation claim. N.C. Gen. Stat. § 95-241(a)(1a) (2003). In order to state a claim under REDA, a plaintiff must show (1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a). *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003). An adverse action includes "the discharge, suspension, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment." N.C. Gen. Stat. § 95-240(2) (2003). If plaintiff presents a prima facie case of retaliatory discrimination, then the burden shifts to the defendant to show that he "would have taken the same unfavorable action in the absence of the protected activity of the employee." N.C. Gen. Stat. § 95-241(b)

(2003). "Although evidence of retaliation in a case such as this one may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation." *Swain v. Elfland*, 145 N.C. App. 383, 387, 550 S.E.2d 530, 534, *cert. denied*, 354 N.C. 228, 554 S.E.2d 832 (2001) (citation omitted).

Plaintiff exercised his rights under the Workers' Compensation Act by filing a claim alleging his exposure to fuel fumes and the stress of his work were significant factors in the onset of his seizure on 30 August 2000. However, plaintiff cannot establish that UPS's failure to return him to work constituted an adverse employment action nor can he demonstrate that the alleged retaliatory action was taken because he exercised his workers' compensation rights.

The medical doctors that examined plaintiff after his alleged seizure concluded he should be restricted from working with hazardous materials such as diesel fuel. In addition, plaintiff's workers' compensation claim states that the "occupational disease was caused by . . . the exposure to the chemical fumes" in his work as a fueler. UPS's failure to return plaintiff to work as a fueler was the result of his physicians' recommendations and plaintiff's own statements, not an adverse employment action.

Although plaintiff has not cited any authority suggesting that a failure to return an employee to work in a position other than his own violates the REDA, we need not reach that issue. Plaintiff has pointed to three other positions that he believes that he could do, but has offered no evidence that any one of the positions currently exists, is vacant, and is within his physical capabilities without modification. Unlike the Americans with Disabilities Act, 42 U.S.C. § 12101 to -12213, the REDA does not require an employer to make an accommodation for an employee. If no position currently exists that plaintiff could perform, necessarily no adverse employment action has occurred.

The REDA statute "does not prohibit all discharges of employees who are involved in a workers' compensation claim, it only prohibits those discharges made *because* the employee exercises his compensation rights." *Johnson v. Trustees of Durham Tech. Cmty. College*, 139 N.C. App. 676, 682, 535 S.E.2d 357, 361 (2000) (citation omitted). Plaintiff offered no evidence showing that UPS had a retaliatory motive, he never discussed his workers' compensation claim with anyone at UPS, and he admits that no one at UPS suggested that he

should not file a workers' compensation claim. Moreover, plaintiff has not been discharged or suspended; the only adverse employment action he cites is the failure to return him to work. UPS's attempts to identify a position for plaintiff that met all of his medical restrictions demonstrates a lack of retaliatory intent and plaintiff has offered no circumstantial evidence otherwise. Plaintiff's claim that the discharge was made because plaintiff exercised his right to file a workers' compensation claim is simply unsupported by the evidence.

Since plaintiff has not met his burden of showing a prima facie case, we are not required to address whether defendant would have taken the action in the absence of plaintiff's workers' compensation claim. Taken in the light most favorable to the plaintiff, we find there is no genuine issue of material fact as to whether defendant took retaliatory action against plaintiff because he filed a workers' compensation claim.

Plaintiff argues that the doctrine of judicial estoppel, which precludes a party from making a factual assertion on one position when it had successfully argued the opposite position in a previous proceeding, *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 28, 591 S.E.2d 870, 888 (2004), should apply in this case. In *Whitacre P'ship*, the North Carolina Supreme Court adopted the test for judicial estoppel set forth by the United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 149 L. Ed. 2d 968, *reh'g denied*, 533 U.S. 968, 150 L. Ed. 2d 793 (2001). *Id.* While noting that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *Id.* (citation omitted), the Court identified three factors used to determine if the doctrine should apply. *Id.*

The first factor, and the only factor that is an essential element which must be present for judicial estoppel to apply, *id.* at 28 n.7, 591 S.E.2d at 888 n.7, is that a "party's subsequent position 'must be clearly inconsistent with its earlier position.' " *Id.* at 29, 591 S.E.2d at 888 (internal citations omitted). Second, the court should "inquire whether the party has succeeded in persuading a court to accept that party's earlier position." *Id.* at 29, 591 S.E.2d at 889. Third, the court should inquire "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (citation omitted). Judicial estoppel is an "equitable doctrine invoked by a court at its discretion." *Id.* (citation omitted).

WILEY v. UNITED PARCEL SERV., INC.

[164 N.C. App. 183 (2004)]

In the present case, UPS asserted that the medical restrictions imposed by numerous physicians prevented plaintiff from returning to work. In 1999, plaintiff filed a grievance with Teamsters Local Union 391 asserting he was wrongfully terminated from employment with UPS. In arbitration, UPS contended that plaintiff's medical restrictions, specifically his need to urinate up to twenty times in a four hour period, limited his employment options. UPS's position in the arbitration case, that medical restrictions prevented plaintiff's return to work, was consistent with its position in the present case making judicial estoppel inapplicable.

In April 2001, plaintiff filed for unemployment benefits. The record does not reflect UPS's position in plaintiff's claim before the Employment Security Commission and UPS contends that it took no position in the adjudication. Since there is no evidence that UPS's position was inconsistent with its position in the previous claim, judicial estoppel cannot apply.

Plaintiff also asserts that the trial court erred when it made findings of fact in the order granting summary judgment. Although "[f]indings of fact and conclusions of law are not necessary in an order determining a motion for summary judgment," *Bland v. Branch Banking & Trust Co.*, 143 N.C. App. 282, 285, 547 S.E.2d 62, 64-65 (2001), "such findings and conclusions do not render a summary judgment void or voidable and may be helpful, if the facts are not at issue and support the judgment." *Id.*

Here, the order includes an introductory section which recognizes that an "entry of summary judgment presupposes that there are no issues of material fact; and that findings of fact are not required." The order explicitly states that the summarized findings of fact are not at issue and support the court's conclusions of law and the entry of judgment. After careful review, we conclude the findings of fact are not in dispute and support the conclusions of law. Therefore, this assignment of error is overruled.

Affirmed.

Judges LEVINSON and GEER concur.