An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e    P r o c e d u r e .

NO. COA13-900
NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

VICKIE H. SOSSAMON,
     Plaintiff,

v.                                     Vance County
                                       No. 12 CVS 506

GRANVILLE-VANCE DISTRICT HEALTH
DEPARTMENT, d/b/a GRANVILLE-VANCE
HOME HEALTH,
     Defendant.


     Appeal by Plaintiff from order entered 26 April 2013 by Judge Henry W. Hight, Jr., in Vance County Superior Court. Heard in the Court of Appeals 8 January 2014.


     *Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for Plaintiff.*

     *Cranfill Sumner & Hartzog LLP, by Dan M. Hartzog, Jr., for Defendant.*


     STEPHENS, Judge.


                    *Procedural History and Factual Background*

     This action arises out of the discharge of Plaintiff Vickie H. Sossamon from her employment with Defendant Granville-Vance Home Health.  Plaintiff worked as a Licensed Physical Therapy

Assistant II ("LPTA") from approximately 4 April 1999 to 9 May 2011. The job required that Plaintiff be able to "perform tasks of heavy lifting, extensive bending, and standing, and must be able to assist in lifting or moving patients weighing as much as 300 pounds."

On 11 June 2008, Plaintiff was involved in a car accident while leaving a patient's home. Plaintiff received medical care for her injuries and eventually returned to work. However, she continued to seek treatment and had ongoing pain. As a result of her injuries, Plaintiff filed a workers' compensation claim on 11 June 2008. In January 2011, Plaintiff took a week off work due to extreme pain. Plaintiff returned to work, but her pain continued. As a result, Plaintiff took Family and Medical Leave Act ("FMLA") leave. Plaintiff returned to work on 21 March 2011, asked for assignment to lighter patients, and was told this was not possible.

On 25 March 2011, a doctor took Plaintiff out of work for one month. On 28 April 2011, Plaintiff presented a doctor's note to her supervisor stating that Plaintiff would never be able to return to work as an LPTA. The note stated Plaintiff was "totally" disabled and Plaintiff was not to engage in "lifting, twisting, turning[, or] bending." Plaintiff informed her

supervisor that she was not going to be able to return to work on 3 May 2011 when her leave was exhausted. Plaintiff testified she was unable to perform the job requirements of an LPTA.

Later on 28 April 2011, Plaintiff met with a doctor employed by Defendant. Plaintiff advised the doctor about "her current situation regarding her continued neck problems and pain as well as the fact that she had brought in documentation from her physician that she was not able to work now nor would she ever be able to return to work . . . ." Plaintiff also advised the doctor that she was going to have surgery for her neck. Plaintiff attempted to finalize some information necessary for Defendant to complete its part of Plaintiff's application for disability retirement. Plaintiff and the doctor employed by Defendant also discussed

> [Plaintiff's] feelings that even if the surgery were successful . . . that continuing to do physical activities required on the job . . . would jeopardize her health and risk . . . exacerbating her neuro-muscular problems in her neck and head area which she hopes to alleviate with the surgery. She stated she agreed with her physician that she would never be able to return to the activities required of her job with us . . . .

Plaintiff did not report to work at the conclusion of her leave, and the termination of her employment became effective on 9 May 2011.

Plaintiff brought suit on 18 May 2012 alleging the following causes of action: (1) violation of the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240 *et. seq.;* (2) wrongful discharge in violation of public policy; (3) violation of the equal protection clause of North Carolina's Constitution Article I, Section 19; (4) violation of the Law of the Land Due Process Clause of North Carolina's Constitution Article I, Section 19; (5) violation of the North Carolina Persons With Disabilities Protection Act ("NCPDPA"), N.C. Gen. Stat. § 168A-1 *et seq.;* and (6) punitive damages. On 23 July 2012, Defendant filed a motion to dismiss on grounds that "Plaintiff's [c]omplaint [did] not state a claim on which relief [could have been] granted, as the [c]omplaint reveal[ed] that Plaintiff was unable to perform her job with or without reasonable accommodation and [was] currently on disability retirement." On 25 September 2012, the motion to dismiss was granted as to all claims except the REDA and wrongful discharge claims. On 7 February 2013, Defendant filed a motion for summary judgment on the remaining claims. On 8 April 2013, Defendant

filed an amended motion for summary judgment. On 26 April 2013, an order was entered granting Defendant's amended motion for summary judgment. Plaintiff filed notice of appeal on 22 May 2013.

*Discussion*

On appeal, Plaintiff argues that the trial court committed reversible error in granting Defendant's motion for summary judgment when there were genuine issues of material fact for determination by a jury of her REDA and wrongful discharge claims. We affirm.

*I. REDA*

Plaintiff argues that the trial court committed reversible error by granting Defendant's motion for summary judgment on her REDA claim. We disagree.

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and internal quotation marks omitted; italics added). "The evidence must be viewed in the light most favorable to the

non-moving party." *Wiley v. United Parcel Serv., Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004) (citation omitted).

Plaintiff argues that "it is clear that [Plaintiff] was terminated (a) due to her workers' compensation claim, (b) the medical treatment for her neck injury, (c) the work restrictions that the treating physicians placed on her due to her neck injury, (d) the refusal of [D]efendant to accommodate those restrictions, and (e) the refusal to allow her to work while awaiting surgery." However, of the possibilities suggested by Plaintiff, only (a), termination due to her filing of a workers' compensation claim, could be a violation of REDA.

Section 95-241(a) of our General Statutes provides in pertinent part that

> [n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to . . .
>
> [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding[,] or other action, or testify or provide information to any person with respect to . . .
>
> . . .
>
> Chapter 97 of the General Statutes [the Workers' Compensation Act].

N.C. Gen. Stat. § 95-241(a) (2013).

The statute [which REDA replaced did] not prohibit all discharges of employees who are involved in a workers' compensation claim[;] it only prohibits those discharges made because the employee exercises his compensation rights. Furthermore, our appellate courts indicated in applying the former provision that a plaintiff fails to make out a case of retaliatory action where there is no close temporal connection between the filing of the claim and the alleged retaliatory act.

*Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 691, 575 S.E.2d 46, 50 (2003) (citation and internal quotation marks omitted).

[REDA] prohibits discrimination or retaliation against an employee for filing a worker[s'] compensation claim. In order to state a claim under REDA, a plaintiff must show (1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a). An adverse action includes the discharge, suspension, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment. If [the] plaintiff presents a *prima facie* case of retaliatory discrimination, then the burden shifts to the defendant to show that he would have taken the same unfavorable action in the absence of the protected activity of the employee. Although evidence of retaliation in a case such as this one may often be completely circumstantial, the causal nexus between protected activity and retaliatory

> discharge must be something more than
> speculation.

*Wiley*, 164 N.C. App. at 186-87, 594 S.E.2d at 811 (citations and internal quotation marks omitted; italics added).

Here, there is no dispute that Plaintiff "exercised h[er] rights" to file a workers' compensation claim and "that [s]he suffered an adverse employment action" when she was terminated from employment. *Id.* at 186, 594 S.E.2d at 811. Thus, the only issue left in considering whether Plaintiff sufficiently forecast a REDA claim is whether "the alleged retaliatory action was taken *because* . . . [Plaintiff] exercised [her] rights" to file a workers' compensation claim. *Id.* (emphasis added).

Plaintiff admitted at her deposition that she was terminated because she could not fulfill her job description. In her complaint, Plaintiff alleged she has "significant pain in her neck and shoulders and is unable to lift, twist, turn, and bend." She also alleged that "[h]er termination was directly related to her work[-]related injury and the resulting work restrictions."

> A party is bound by h[er] pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader. [Sh]e cannot subsequently take a position contradictory to h[er] pleadings. An admission in a

> pleading has the same effect as a jury finding[] and is conclusive upon the parties and the trial judge.

*Bradley v. Bradley*, 206 N.C. App. 249, 255-56, 697 S.E.2d 422, 427 (2010) (citations and internal quotation marks omitted).

Further, in other actions, Plaintiff has taken the position that she was terminated because she was unable to perform her job requirements. First, on her Department of Labor complaint form, Plaintiff stated that she was "terminated due to inability to perform [the] job description." Plaintiff confirmed this statement was accurate in her deposition for this case:

> [Defense Counsel]: And I'll draw your attention to the second page[]: "Why do you think your employer took this employment action against you?" Your answer was, "I did file a worker[s'] compensation claim[;] however[, I was] terminated due to inability to perform [the] job description, which was to be able to lift up to 300 pounds."
>
> [Plaintiff]: That's correct.
>
> [Defense counsel]: So that's your reason that you've given to the Department of Labor as to why you were terminated, correct?
>
> [Plaintiff]: Yes.
>
> [Defense Counsel]: And was that an accurate reason?
>
> [Plaintiff]: Yes.

Second, in response to an interrogatory in her workers' compensation case, Plaintiff stated that she was "[t]erminated on May 9, 2011 due to not being able to perform [her] job description." Finally, in a deposition related to a separate lawsuit for the underlying car accident, Plaintiff once again stated that she was terminated due to her inability to perform the tasks listed in the job description. Therefore, so far as Plaintiff's REDA action is concerned, her consistent position and judicial admissions that she was terminated due to her inability to perform the functions required by the job are conclusive.

Moreover, Plaintiff's contention that she was not offered an accommodation does not save her REDA claim. A failure to return an employee to work in a position other than her own has never been held to be violative of REDA. *See Wiley*, 164 N.C. App. at 187, 594 S.E.2d at 812 ("[P]laintiff has not cited any authority suggesting that a failure to return an employee to work in a position other than his own violates . . . REDA[.]"). As this Court has noted, "[u]nlike the Americans with Disabilities Act, . . . REDA does not require an employer to make an accommodation for an employee. If no position currently exists that [the] plaintiff could perform, necessarily no

adverse employment action has occurred." *Id.* Thus, Defendant's actions were not "retaliatory actions" within the meaning of REDA, and Plaintiff has failed to forecast sufficient facts to support a REDA claim.

Plaintiff's own testimony, in this case and in previous actions, indicates that the reason for her termination was her inability to fulfill her job description. Plaintiff's claim that she was discharged because she exercised her right to file a workers' compensation claim is simply unsupported by the evidence and contradicted by her testimony in this case and others. Since Plaintiff has not met her burden of showing a *prima facie* case, we are not required to address whether Defendant would have terminated Plaintiff's employment in the absence of Plaintiff's workers' compensation claim. Taken in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Defendant took retaliatory action against Plaintiff because she filed a workers' compensation claim. Plaintiff's argument is overruled.

*II. Wrongful Discharge*

Next, Plaintiff argues the trial court erred in granting summary judgment on her claim for wrongful discharge in violation of public policy. Again, we disagree.

"In North Carolina, . . . absent an employment contract for a definite period of time, both employer and employee are generally free to terminate their association at any time and without reason." *Gravitte v. Mitsubishi Semiconductor Am.*, 109 N.C. App. 466, 472, 428 S.E.2d 254, 258 (citation omitted), *disc. review denied*, 334 N.C. 163, 432 S.E.2d 360 (1993).

The discharge of an at-will employee generally does not support an action for wrongful discharge in this State. However, as argued by Plaintiff, exceptions to this general rule have been recognized by our appellate courts, including a prohibition against termination for a purpose in contravention of public policy. Plaintiff cites some of the leading cases that have recognized this exception. *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 493 S.E.2d 420 (1997) (holding it a violation of public policy for nurse who alleged her employer pressured her not to testify honestly in a malpractice lawsuit and discharged her after she testified honestly), *reh'ing denied*, 347 N.C. 586, 502 S.E.2d 594 (1998); *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992) (holding it a violation of public policy for employer to discharge employee for refusing to work for less than statutory minimum wage); *Deerman v. Beverly California Corp.*, 135 N.C. App. 1, 518 S.E.2d

804 (1999) (holding it a violation of public policy where a nurse was allegedly fired for reporting violations of state regulations by employer), *disc. review denied*, 351 N.C. 353, 542 S.E.2d 208 (2000); *Roberts v. First-Citizens Bank & Trust Co.*, 124 N.C. App. 713, 478 S.E.2d 809 (1996) (holding it a violation of public policy to discharge a commercial loan officer for refusal to cash collateral without giving notice to debtor as required by statute); *Vereen v. Holden*, 121 N.C. App. 779, 468 S.E.2d 471 (1996) (holding discharge of employee for political affiliation violates public policy); *Lenzer v. Flaherty*, 106 N.C. App. 496, 418 S.E.2d 276 (1992) (holding it a violation of public policy when hospital worker discharged for reporting patient abuse); *Williams v. Hillhaven Corp.*, 91 N.C. App. 35, 370 S.E.2d 423 (1988) (reversing dismissal of the plaintiff's complaint where the plaintiff alleged she was fired after testifying truthfully against her employer). In each of these cases, our Courts have recognized an exception to the employment at will doctrine by identifying a cause of action for wrongful discharge in violation of public policy. Under the exception, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy.

In her complaint, Plaintiff identifies the public policy supporting her wrongful discharge claim as the disability discrimination prong of the North Carolina Equal Employment Practices Act ("the Employment Act") and its public policy statement set forth in N.C. Gen. Stat. § 143-422.1 *et seq.* "[A]t the very least, public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos*, 331 N.C. at 353, 416 S.E.2d at 169. The Employment Act provides in pertinent part:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain[,] and hold employment without discrimination or abridgement on account of . . . handicap . . . .

N.C. Gen. Stat. § 143-422.2 (2013). The Employment Act does not define "handicap," and thus, we turn to other North Carolina statutes relating to the same subject matter to determine legislative intent. *McCullough v. Branch Banking & Trust Co., Inc.*, 136 N.C. App. 340, 347, 524 S.E.2d 569, 574 (2000).

The NCPDPA defines a "[p]erson with a disability" as

> any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.

N.C. Gen. Stat. § 168A-3(7a) (2013).

When a "qualified person with a disability" requests that an accommodation be made for her disabling condition, her employer must investigate whether there are reasonable accommodations that can be made and must make reasonable accommodations for the person's condition. N.C. Gen. Stat. § 168A-4 (2013). Assuming without deciding that Plaintiff is a "person with a disability," as that term is defined in section 168A-3(7a), we conclude that Plaintiff is not a "*qualified* person with a disability." (Emphasis added). That term means:

> With regard to employment, a person with a disability who can satisfactorily perform the duties of the job in question, with or without reasonable accommodation, (i) provided that the person with a disability shall not be held to standards of performance different from other employees similarly employed, and (ii) further provided that the disabling condition does not create an unreasonable risk to the safety or health of the person with a disability, other employees, the employer's customer, or the public . . . .

N.C. Gen. Stat. § 168A-3(9)(a).

The evidence demonstrates that Plaintiff could not perform the duties of the job of an LPTA as defined in the job description. Furthermore, given the fact that the job of LPTA entails performing CPR on Defendant's patients, we believe that

Plaintiff's condition, which renders her unable to perform CPR due to her restrictions on twisting and bending, could create an unreasonable risk to herself and Defendant's patients. As Plaintiff was not a "qualified person with a disability," we conclude that Defendant was under no duty to make accommodations for Plaintiff's physical condition. *See, e.g.*, *White v. N.C. Dep't of Corr.*, 117 N.C. App. 521, 527, 451 S.E.2d 876, 881 (1995) ("The evidence demonstrates that the petitioner could not perform the duties of the job of correctional officer as defined in the job description. Furthermore, given the fact that the job of correctional officer entails the supervision of inmates, we believe that petitioner's condition, which renders him unable to pursue foot-fleeing inmates or physically subdue them effectively, could create an unreasonable risk to himself, his fellow correctional officers, other inmates[,] and the public at large. As petitioner was not a 'qualified [person with a disability],' we conclude that respondent was under no duty to make accommodations for petitioner's physical condition.").

Furthermore, Plaintiff's contention that Defendant failed to provide reasonable accommodations is not relevant in a claim for wrongful discharge in violation of public policy. Our Court has stated:

> [The] plaintiff's concern with the defendant's alleged failure to provide reasonable accommodations to the plaintiff is misplaced. Had [the] plaintiff filed a claim under N.C. Gen. Stat. § 168A-11, which provides a civil cause of action under the [NCPDPA], such a discussion may have been appropriate. However, since [the] plaintiff's claim is based on wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.2, a discussion of reasonable accommodations under N.C. Gen. Stat. § 168A-3(9) and (10) is irrelevant.

*Simmons v. Chemol Corp.*, 137 N.C. App. 319, 323, 528 S.E.2d 368, 371 (2000). Although Plaintiff did file a claim under NCPDPA, this claim was dismissed at the Rule 12(b)(6) stage and that ruling has not been appealed. Therefore, Plaintiff's contention that she was denied reasonable accommodations is not relevant to her wrongful discharge claim.

Finally, Plaintiff argues that Defendant violated public policy because "[D]efendant's own policy manual provides the procedure and policy that [D]efendant must follow when an employee requires or requests a reasonable accommodation." This Court has stated:

> We are . . . aware that there are strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice.

> Nevertheless, the law of North Carolina is clear that unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it.

*Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 83-84 (1985) (citations omitted), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986).

There is no evidence in the record to suggest that the policy manual became part of Plaintiff's employment contract. Therefore, on the record before us, we hold that Plaintiff failed to present a sufficient forecast of evidence to survive Defendant's motion for summary judgment on this issue.

AFFIRMED.

Judges STEELMAN and DAVIS concur.

Report per Rule 30(e).